Good morning. May it please the court, Jia Kim appearing on behalf of Appellant Jesus Ramirez-Nunez. I'd like to reserve two minutes of my time for rebuttal. I'll try to help you out, but keep your eye on the clock, please. Yes, Your Honor. The District Court erred by denying Mr. Ramirez-Nunez's motion to dismiss based on the statute of limitations. And in litigating this basically an agreed-upon record. And that record showed that Mr. Ramirez-Nunez reentered the United States on December 7th, 2006, more than five years before the indictment was filed here. And that he did so openly rather than surreptitiously. And this reentry was open in three senses. First of all, it occurred at an official port of entry, Calexico West, rather than, you know, involving taking over the border. Second, Mr. Ramirez-Nunez presented immigration authorities with his real name as reflected in his California driver's license, as opposed to using an alias that has occurred in some of other 1326 cases. And finally, that driver's license, the state-issued driver's license, was itself valid as is undisputed, and thus doesn't fall into the category of specious documentation, usually an invalid green card, invalid but authentic green card, as in Zamudio and similar cases. And all of this adds up to actual knowledge on the part of immigration authorities that Mr., of Mr. Ramirez-Nunez's presence and his identity. And this court has held in Hernandez, which was the venue case, that a section 1326 offense ends, and in that case it was purposes of where, but here it's for purposes of when. It ends when an alien is discovered and identified by immigration authorities. And here we have, based on the knowledge of ICE and its sister agency in DHS, Custom and Border Protection or Border Patrol, which is an office within CBP, all of that knowledge present at the time he re-entered in 2006. Now even... We have a case in our circuit called Zavala-Mendez. And in a footnote, it talked about a situation like this one, where the defendant got in through the border station because he returned before the government could put his database of deported or removed individuals. Then he stayed in the U.S. for three years. He didn't get caught until he sought a security clearance from Custom Service. And then the question there is whether he was found. And in Zavala-Mendez, we said that he was found in the U.S. three years after getting past the official surveillance. I don't see how that's really distinguishable from this situation. Your Honor, if I may. Well, it is distinguishable in two senses. First, that he... On the facts of this case, the immigration authorities, which does include ICE, which does include Border Patrol, had all the information. And also, this court hasn't had occasion to rule on the issue of constructive knowledge. So even if that doesn't rise to the level of constructive knowledge, actual knowledge, it does constitute constructive knowledge as to his presence and identity and putting that together for the government to know that Mr. Ramirez Nunez was not only here, but that his presence here was unlawful. And this court has asked, you know, as to which party bears the burden on constructive knowledge. And, you know, we would submit that based on the Supreme Court's decision in Musacchio, the government does. And that's for two reasons. First of all, generally, the government bears the burden of showing compliance with the statute of limitations, at least when the defendants put that issue into play, which has clearly occurred here. And it makes sense more generally because typically the party, with access to better knowledge on the issue, bears that burden. And here, as to constructive knowledge, which goes to, you know, what policies were in place at the border, what screening, you know, practices or training occurred, what the file keeping looked like back in 2006, what the computer capabilities were, the government is in a far better position than a defendant, an alien, as to present those facts to the court. And in the district court, the government presented some facts of that nature, namely that it would be, quote, highly unusual for the deportation order itself to be in the computer database at the border within 24 hours. However, it did not proffer anything as to Mr. Ramirez Nunez's actual file. And furthermore, a person is typically not deported overnight. It did not say that if the name had been run or questions had been asked, that it wouldn't have flagged him as a person, you know, with an immigration detainer or warrant or as someone who had been put into proceedings very recently. It also did not even say that that question had been asked as to his authority to enter. Rather, it mostly says, you know, it's very busy at these ports of entries. There's a lot of pressure to process people efficiently, which doesn't really establish diligence. And when it comes to constructive knowledge, you know, due diligence is what one would reasonably expect of law enforcement. And, you know, that, I think, at a bare minimum, would be asking someone for their authority to enter. And there's no dispute as to that. The government proceeded on that proffer that that even occurred. So if there are no further questions, I would reserve the remainder of my time. I don't have any further questions. But if you could take a look at that, and I think it's footnote 20, if I recall correctly, of Zavala Mendez and come back up and it will be helpful to tell us how we can grapple with the identity of the facts presented in that case and the statement that the alien wouldn't be found when he entered at the border, but instead would be found later, how we can distinguish that language. Yes, Your Honor. Thank you. Thank you. Good morning. May it please the court. Catherine Richmond on behalf of the United States. The district court was correct to deny defendants motion to dismiss under binding Ninth Circuit precedent. It was also correct to reject adopting out of circuit, non-binding precedent, especially when defendant, even with the adoption of that case law, would still lose on the facts. More specifically, it was correct that Zamudio was dispositive because Zamudio held that a defendant presenting himself and his true name on an official government document at the border did not give authorities knowledge, either actual or constructive of defendants presence. Without notice, authorities had not found defendant in the United States and therefore the statute of limitations did not begin to run. The facts in this case are similar to those in Zamudio. In Zamudio, defendant was removed. He presented himself at a port of entry and presented border authorities with his true name on an official government document. Here, the same facts. Defendant was removed. He presented himself at a point of entry and he also presented border authorities with his true name on an official government document. Zamudio held that just presenting yourself and your true name on an official government document does not give authorities knowledge, either actual or constructive to establish a found in offense, where found in means the discovery and identification of the defendant. Otherwise, Zamudio would have had the opposite holding, which was that merely presenting an ID at a border would be enough to establish found in. But as Zamudio held, and as the court pointed out, Zavala-Mendez also indicates that that is not enough. Zamudio held that successful deception should not be rewarded. That is, it should not empower a defendant to later avoid prosecution under the theory that despite his deception, the government should have known better. But most importantly, your honors, Zamudio is the binding standard in this circuit. The inquiry is actual knowledge. And in this case, border authorities did not have actual knowledge of defendant's presence when he presented himself at the border and his California license. I'd like to address constructive knowledge next, your honors. Before you address that, I just have one very minor question. Are you asking that we infer that Mr. Ramirez-Nunez deceived the immigration authorities at the border? He presented a valid driver's license, and the authorities admitted him. Yeah, no one asked him about his immigration status, at least according to the record. It doesn't show that they asked. So how do we determine that he deceived the government in some fashion? Your honor, I have a two-part answer to that question. The first part is, is that under Zamudio and Diaz-Hinojosa and other cases in the circuit, the inquiry is really on whether the government had the information and the means to know that defendant was an alien. And Zamudio clearly held that presenting oneself at the border and presenting an official travel document with a true name is insufficient to impart actual knowledge or even constructive knowledge to border authorities. To get to the court's actual question about whether it needs to find deception, I don't think it does for that reason. But in these circumstances, I think there was a deceptive nature about the way defendant presented himself. He came presenting official documentation at the border, and Zamudio held unequivocally that the only purpose for presenting oneself at a border with an official travel document is to gain entry. Defendant argued otherwise in his brief, but both Zamudio and common sense say that the only reason to do that would be to gain illegal entry. I believe the phrase Zamudio used was that he falsely cloaked himself in an authority he did not have by presenting that travel document to the authorities. So he should have done more, he should have, what should Ramirez-Diaz have done here? I apologize, Your Honor. The burden here is not on the defendant. The inquiry is more properly on whether his presentation of that documentation imparted knowledge to the border authorities. And under Zamudio, the answer is no, it does not. Merely presenting an identification even with one's true name does not impart knowledge. Thank you. As for constructive knowledge, Your Honor, that is not the law in this case to begin with. And even if the court wishes to entertain adopting that standard, this is not the vehicle to accept that standard because defendants still loses on the facts here. Zamudio, although it applied actual knowledge, analyzed constructive knowledge as well, and held that Zamudio would have lost because the government had neither the information nor the means to track down defendant's illegal status. And that was because after the defendant presented his green card at the border, he took it with him, thereby depriving the government of information to later use through standard investigative techniques to determine whether he was an alien. Here we have the same facts. Defendant presented his ID, but he took it with him when he left. And under Zamudio, that's a deprivation of information the government can later use to follow up on whether the person who presented themselves at the border was an alien. And indeed, the declaration submitted by the CBP officer said that even if the border patrol officer had run his name through a database, the information would not have even been in the database to determine whether the defendant was in fact an alien. I'd like to address the standard of review. It seems that the court is interested in that. Your Honor, it's the government's position that there is a two-part burden-shifting standard of review. Excuse me, burden of proof. First, it begins with the defendant presenting a prima facie case by the preponderance of the evidence. Typically, as under Bailey, when a defendant presents an affirmative evidence, the original burden, although it is prima facie and by a preponderance of the evidence, is on the defendant. Once the defendant has established his prima facie case, the burden then shifts to the government to prove or rebut beyond a reasonable doubt that the government is incorrect. I believe that the cases are somewhat confusing because neither actually lays out that standard, although all of them touch on it. For example, Musacchio, Cook, and Sampson all speak of the government's burden, whereas Acevedo and Zamudio speak of the defendant's burden. I believe the cases are confusing because typically, after a defendant presents by preponderance his affirmative defense, the burden shifts to the government, which is where the analysis usually focuses. It's where the meat of the case is. So when cases like Musacchio, Cook, and Sampson talk about the government having a burden, that's correct. But it's actually part two of a burden-shifting analysis, wherein the defendant makes the original proffer of proof through a preponderance of evidence in a prima facie case. I'd also like to address DiSantio, which was raised both in the court below and here. DiSantio is factually dissimilar in several important respects, including that defendant applied in a one-month-long application process for a visa in which he submitted numerous pieces of truthful information to the government, and the government had both the information and the investigative means in terms of time and resources to determine whether he had, in fact, been deported. That defendant also had directly been submitting reports to the INS, which in this case, we don't have anything like that. Finally, your honors, I see that my time is running low, but as a last point, I would like to address the public policy issue that defense counsel just raised. There's nothing in this case that could incentivize Border Patrol officers to change their behavior. Here, it is a near factual impossibility to enter the deportation information into a searchable database any faster than it was. Defendant presented himself at the border just the day after he was deported. In this case, to render a finding against the government, there would be no public policy that would be enacted that would encourage Border Patrol officers to be more effective or thorough in their investigations of aliens at the border. If the court has no further questions, I submit. Thank you. Thank you, your honor. With respect to Zavala-Mendez, which I have here, and footnote 20, the issue in Zavala-Mendez, as this court no doubt knows, is what constitutes being found in in the first place. There is a line of cases in this circuit that at some points, in some instances, an alien does not even get to the point of being found in either because they've been under official control or under surveillance the entire time from which they proceeded from the border. That was the issue itself in Zavala-Mendez. Now, in footnote 20, the majority is responding to the dissent's discussion of some Outer Circuit cases, including cases called Gay and Canal Jimenez from the 11th Circuit, which at one point the 11th Circuit had suggested that found in offenses only apply to surreptitious entries, which this court has rejected in a different case. And then it sort of backed off of that holding in subsequent cases. So in footnote 20, this court is dealing with that decision, Gay, which I believe occurred back in the illegal reentry occurred in the 80s. And I believe the alien in that case, though I don't have it in front of me, used also an authentic or invalid green card or a passport that had not been properly stamped. And in that case, there was a record that it took four to six months in the 80s to input all of the information. And that this reentry had occurred in that window sometime. So I don't believe this was, I mean, at most, I think this is a question that lurked in the record in Zavala-Mendez. It was not the issue before this court. The government notably has not relied on Zavala-Mendez in any way. And further, this footnote occurs in the context of sort of distinguishing an out-of-circuit case, Gay, for its holding on Foundin, which this court had already departed from, I believe, in Ortiz-Villegas, saying, Foundin offenses aren't limited to surreptitious entries, which it had rejected some time ago. So that is how I would, I would distinguish that as not being, as being a point that this court did not actually pass on in Zavala-Mendez and that the district court did not consider, the government has never cited the government and the district court believe this case controlled, if anything, by Zamudio, which we have distinguished as involving a green card and something that is clearly a travel document and something that clearly would have lulled a border officer into believing that a right to enter has been asserted. Thank you. All right. Thank you very much to both sides for your argument in this case. It's submitted for decision by the court.
judges: Cole, Fisher, Nguyen